LOTTINGER, Judge.
This is a suit by plaintiffs-appellants, for collection of certain employee benefits due under an alleged contract with defendant-appellee. The Lower Court found that there was no contract for the benefits for which plaintiffs sued, and it rendered judgment in favor of defendant and against plaintiffs, dismissing plaintiffs’ petition at plaintiffs’ costs.
The only issue before us is whether defendant-appellee contracted to pay fifteen cents per hour for each hour worked by its employees, said moneys to go into a health and welfare fund for their benefit.
The defendant, Menzie Tile Company, Inc. was formed in November, 1970, through a merger of Woolie Tile Company and Menzie Tile Company. Both prior-existing companies had labor contracts with the plaintiff union expiring April 1, 1971.
No agreement was reached by April 1, 1971, and the union struck plants in the New Orleans area. The defendant’s employees continued to work in Baton Rouge under the old agreement pending negotiations.
Plaintiff union and the New Orleans Tile Contractors Association, Inc. reached a final agreement in the negotiations on May 23, 1971. It was necessary that the agreement be sent to the Construction Industry Stabilization Committee in Washington for approval. This committee approved the agreement on January 22, 1972. The contract which the committee approved provides for a wage increase of ten cents per hour and health and welfare payments of fifteen cents per hour effective May 25, 1971.
While the contract was before the CISC pending approval, the business agent of the union requested each contractor to sign an agreement to signify that each would be bound by the changes negotiated between the union business agent and the contractor’s association. The defendant through its secretary, Mr. Woolie, signed such an agreement on January 21, 1972. The agreement he signed did not set forth what these changes were, and, in essence, this is *755 the reason for this law suit. The prior agreement, which expired on April 1, 1971, remained the same with only one exception, and that is an increase in the hourly rate of pay and/or health and welfare benefits. As we have already stated, an agreement was reached between the union and contractor’s association on May 23, 1971. An instrument which has been designated as Exhibit P-2 was signed on May 24, 1971 by L. D. Roubion, Jr. for the contractor’s association and by Clarence A. Smith as the business agent of the union. This instrument calls for a twenty-five cents per hour raise for defendant’s employees. It is not completely clear how a copy of this agreement got into the possession of Mr. Woolie, the secretary of defendant corporation, but it was probably sent to him by Mr. L. D. Roubion, Jr. of the contractor’s association. The problem arises because a similar agreement, designated as Exhibit P-2 (a), also signed by Mr. Roubion and Mr. Smith, but without any date, calls for a ten cents per hour raise for employees and a fifteen cents payment by the employer to a health and welfare fund. Exhibit P-2 was the only agreement between the union and contractor’s association which defendant had knowledge of. However, Exhibit P-2(a) was forwarded to CISC for approval. It was not until the entire labor contract was printed with the changes set forth in Exhibit P-2 (a) and presented to Mr. Woolie for his signature that he knew of the terms of Exhibit P-2 (a). When he discovered that this was the agreement he was being asked to ratify, he refused to sign.
Mr. Woolie testified that he did not intend to ratify the terms of P-2(a), inasmuch as he did not know of its existence when he signed the agreement on January 21, 1972 at the request of the union. It was his understanding that the expired contract was being amended as provided in P-2 to give his employees a twenty-five cents per hour raise. Whereas plaintiff says there is no difference out of defendant’s pocket in a twenty-five cents per hour raise and ten cents per hour raise and fifteen cents per hour contribution to a health and welfare fund, Mr. Woolie testified that in his opinion there was a major distinction. First, he testified that he was perfectly willing for his employees to receive a twenty-five cents per hour raise, but that he was not willing to pay fifteen cents per hour into a health and welfare fund from which neither he nor his employees knew what benefit they would receive. Secondly, he testified that he was opposed to a health and welfare fund because of the increased clerical expense that making these payments would require.
The Lower Court found that no contract came into existence at the time of the execution of the agreement of January 21, 1972 because there was, “no meeting of the minds.” Mr. Smith, who was the business agent of the union was thinking that he was contracting on the basis of the old contract with the exceptions contained in Exhibit P-2(a), whereas, Mr. Woolie, the secretary of the defendant corporation, was thinking that he was contracting on the basis of the old contract with the exceptions contained in Exhibit P-2. In the eyes of the Lower Court, there was “no meeting of the minds” or in civilian terminology, the will of the parties did not unite on the same point.
The plaintiffs’ brief specifies six reasons that plaintiffs’ believe that the Trial Court erred in failing to find a contract between plaintiffs and defendant.
First, plaintiffs urge that the error of the defendant did not relate to a principal cause of the contract within the meaning of C.C. Art. 1823. It can not be denied that the monetary cost to the defendant appears to be the same, that is, a twenty-five cents per hour raise to employees equals ten cents per hour raise to employees and fifteen cents per hour paid into the health and welfare fund. However, we are impressed as the Lower Court must have been, that the health and welfare fund would cost the defendant additional clerical expenses. We are more impressed how *756 ever with Mr. Woolie’s statement that he was willing to give his employees a twenty-five cents per hour raise but he was not willing to pay the majority of this sum into a health and welfare fund which may or may not have resulted in benefit to his employees. Furthermore, this one point is the only change made in the contract which expired on April 1, 1971. If it is not material, then there would have been no need for the negotiations which took place. Accordingly, we believe that the error involved relates to the principal cause of the contract.
Secondly, plaintiffs say that, “the defendant is bound by the acts of his bargaining agent and the ultimate agreement reached, since he participated in the joint negotiations and never withdrew his consent for the contractor’s association to bargain for him.” The record of this matter contains no evidence of any kind that anyone, including the contractor’s association, was a bargaining agent for the defendant. The record shows that Mr. Woolie, secretary of the defendant corporation, was a spectator at two or three of the bargaining sessions but nowhere in the record do we find that he participated in the negotiations in such a way that he would be held to have been a participant and in this manner bound by the agreement reached.
Thirdly, plaintiffs argue that defendant’s error was not brought about by any act of the plaintiffs, but was caused by defendant reading the agreement circulated by Mr. L. D. Roubion, Jr. of the contractor’s association. The record is clear that Clarence A. Smith, the business agent of the union, signed the agreement designated Exhibit P-2 on which defendant relied, and in this way plaintiffs did have a part in misleading the defendant. In plaintiffs’ words, the defendant was misled by the fact that Mr. Roubion of the contractor’s association circulated the agreement which defendant relied on. We find no merit in this argument inasmuch as this agreement was not unilateral but was also signed by Mr. Clarence A. Smith of the union.
Plaintiffs’ specification of error number 4 is to the effect that by the defendant signing the agreement dated January 21, 1972, defendant is bound to abide by the agreement as approved by the Construction Industry Stabilization Committee. Plaintiffs are further saying that defendant would have been bound by any changes in the agreement that the committee may have imposed. We do not think that this was the effect of the January 21, 1972 agreement. By signing it, defendant simply bound itself to abide by the proposed changes in the expired union contract as it understood these changes to be, provided these changes were approved by the CISC.
Plaintiffs urge that defendants did not plead mistake or nullity in its answer to this suit, and that the Trial Court erred in considering this defense. We note that the record contains no objection by the plaintiffs to the evidence presented by the defendant concerning this defense. C.C.P. Art. 1154 provides that when issues not raised by the pleadings are tried by the express or implied consent of all the parties, they shall be treated in all respects as if they had been raised in the pleadings. Additionally, we note that paragraph B of the Proposed Pre-trial Order which was signed by counsel for plaintiffs makes it clear that defendant is contesting the changes made in Exhibit P-2 before it was submitted to the Construction Industry Stabilization Committee in the form of Exhibit P-2(a).
Finally, plaintiffs believe that defendant should be bound to the terms of Exhibit P-2 which calls for an increase of twenty-five cents per hour in wages which was the change defendant believed was to be made in the expired union contract. Until this very moment in plaintiffs’ brief, plaintiffs are saying that Exhibit P-2 does not contain the terms on which they contracted. Apparently they are saying to us however that if they cannot enforce the terms of P-2 (a) against defendant, they wish to enforce the terms of P-2. We believe that it is much too late for plaintiffs *757 to put the terms of P-2 into the form of a counter offer and to accept it now on appeal. Additionally, the Construction Industry Stabilization Committee has never accepted the terms of Exhibit P-2.
We find no error in the Lower Court’s findings of fact or application of law thereto.
For the above and foregoing reasons, the judgment of the Lower Court is affirmed, plaintiffs to pay all costs.
Judgment affirmed.